UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLINTON RUDY MAGNUS,<br><br>Defendant. | 4:18-CR-40117-02-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Clinton Rudy Magnus, renews his request for relief under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 279. For the following reasons, the court denies defendant's renewed motion for compassionate release.

## BACKGROUND

The background of Magnus's case was set forth in the court's order dated January 20, 2021. Docket 278. To summarize, on September 9, 2019, the court sentenced Magnus to 132 months in custody followed by 5 years of supervised release because he violated 18 U.S.C. § 2252A(a)(2)(A). Docket 211 at 2; Docket 213 at 2-3. Magnus is incarcerated at Federal Correctional Institution Greenville (FCI Greenville) in Greenville, Illinois. Docket 268 at 257. Magnus's anticipated release date is February 12, 2024. Fed. Bureau of Prisons, https://www.bop.gov/inmateloc (last checked Apr. 21, 2021). Magnus is 41 years old. *Id.*

In support of his renewed request, Magnus urges the court to consider that FCI Greenville has had a drastic increase of COVID-19 infections, his

medical conditions include thyroid problems and obesity, and the circumstances regarding his minor daughter have changed since the motion was originally denied. Docket 279 at 2-9. Magnus contends these changes in circumstances warrant his early release from custody. *Id.* He requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.* at 11.

## DISCUSSION

The court detailed the governing law and analysis it uses when confronted with a compassionate release motion in its order dated January 20, 2021. Docket 278. For current purposes, it is sufficient to note that because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). But Congress made changes to the law through the First Step Act (FSA), which permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. *See* Pub. L. No. 115-391, § 603(b)(1) 132 Stat. 5194, 5239 (2018). Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave custody early. 18 U.S.C. § 3582(c)(1)(A)(i). When considering whether to grant a motion for compassionate release the court must consider the 3553(a) sentencing factors and the applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

As of April 27, 2021, there are currently no active COVID-19 cases among FCI Greenville's inmates and staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021).  There have been no inmate deaths reported from COVID-19 at FCI Greenville, and 702 inmates have recovered as of April 23, 2021. *Id.* The total population at FCI Greenville is currently 1,198 persons. https://www.bop.gov/locations/institutions/gre/ (last visited Apr. 27, 2021). The reported information demonstrates the COVID-19 outbreak at FCI Greenville was widespread, but not devastating. This persuades the court that FCI Greenville has acted appropriately to treat inmates who do contract COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

Additional efforts are being undertaken by the Bureau of Prisons (BOP) to address the risk. The BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021). As of April 27, 2021, 146,971 doses have been administered systemwide. *Id.* At FCI Greenville, 149 staff and 511 inmates were fully inoculated as of April 27, 2021. *Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/ (last visited Apr. 27, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher

potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community. *Id.*

Magnus next asserts that his medical conditions and family circumstances coupled together warrant early release from custody. Docket 279 at 2-4, 9; Docket 279-1 at 1. However, the court addressed these arguments in the prior order and its analysis remains the same, despite new information provided to the court.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) recently updated its current understanding of these risks. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021) (last visited Apr. 23, 2021). As relevant to this case, the CDC now states individuals who are immunocompromised and who suffer from obesity *can* be more likely to become severely ill from COVID-19. *Id.*

Magnus argues that his thyroid condition puts him at risk of developing Grave's disease, which is an autoimmune condition. Docket 279 at 3, 9. While this may be true, an autoimmune thyroid disease is not considered an immunocompromised state, therefore, "having Hashimoto's or Graves' [disease] does not put a person in the CDC high-risk category." *See How does COVID-19 impact the thyroid?*, https://blogs.bcm.edu/2021/01/25/how-does-covid-19-impact-the-thyroid/ (dated Jan. 25, 2021) (last visited Apr. 21, 2021). According to his medical records, Magnus suffers from hyperthyroidism and a

history of Graves' disease; however, a treatment plan has been established with his provider. *See* Docket 268 at 128, 132, 142, 197, 255. This allows the court to conclude that appropriate measures have been taken to treat Magnus's condition. He appears to be receiving proper medical management within the correctional facility.

Turning to his condition of obesity, on February 25, 2020, Magnus weighed 238 pounds and is 72 inches tall. Docket 268 at 151, 206. Based on his height and weight, his BMI is 32.3, which qualifies him as obese. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/ adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Apr. 21, 2021). Magnus's obesity is also a condition that increases the risk of severe illness from COVID-19.

Nevertheless, this court has required a more particularized showing of risk and has concluded obesity alone or in combination with other conditions that might increase the risk is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19 pandemic. *See, e.g.*, *United States v. Wright*, 4:16-CR-40083-04-KES, 2021 WL 391605 at *3-4 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5 or 33.3, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *United States v. Adame*, 4:18-CR-4017-05-KES, 2020 WL 7212096, at *3-5 (D.S.D. Dec. 7, 2020) (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19); *United States v. McAbee*, 4:14-CR-40027-01-KES, 2020 WL

5

5231439, at *3-4 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons). Magnus's conditions are similar to those where the court has denied compassionate release motions.

Lastly, Magnus argues that his changed family circumstances warrant compassionate release. Docket 279 at 9. To justify compassionate release under the family circumstances category, the defendant must demonstrate one of the following: (1) the death or incapacitation of the caregiver of the defendant's minor children or (2) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. USSG § 1B1.13, cmt. n.1(C). Magnus submitted a letter to the court dated March 8, 2021, from Southwest Health and Human Services reporting on the results of the agency's investigation. Docket 279-1 at 1. The letter informed Magnus that child protective services are needed for his daughter as a result of a finding of maltreatment due to neglect. *Id.* The letter does not indicate the child was taken from the mother's care, nor is there any evidence to support the child will be without a home as a result of the agency's conclusion. *Id.* The court is not unsympathetic to the needs of Magnus's daughter, but these circumstances do not qualify for release under the family circumstances category.

In sum, the court finds Magnus's current circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling" reasons. In addition, the court's evaluation of the 3553(a) factors

has not changed over the intervening months since Magnus's initial motion for release was denied.

## CONCLUSION

Magnus has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 279) is denied.

Dated April 27, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE